IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| AMY SACKETT, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 04-1080-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| ES-O-EN CORP., an Oregon domestic business corporation and franchise of Taco Bell Corp., dba TACO BELL, | ) ) ) ) | |
| Defendant. | ) | |

       Sharon Stevens
       Michael D. Callahan
       Callahan & Stevens
       5845 Shoreview Lane N., Suite 500
       P. O. Box 20937
       Keizer, Oregon  97307-0937

            Attorneys for Plaintiff

D. Gary Christensen
Tamara E. Russell
Miller Nash, LLP
3400 U. S. Bancorp Tower
111 S. W. Fifth Avenue
Portland, Oregon  97204-3699

J. Kevin West
Jill M. Twedt
Hall, Farley, Oberrecht & Blanton, P. A.
702 W. Idaho, Suite 700
P. O. Box 1271
Boise, Idaho  83701

    Attorneys for Defendant

KING, Judge:

Plaintiff Amy Sackett brings a sexual harassment claim under Title VII and under the parallel Oregon statute, ORS 659A.030, against a Taco Bell franchise, ES-O-EN, alleging that she was subjected to a hostile work environment.  She also includes in her allegations that the sexual harassment resulted in constructive discharge.  Before me is Defendant's Motion for Summary Judgment (#21).  For the following reasons, I deny defendant's motion.

## BACKGROUND

ES-O-EN has two Taco Bell franchise locations in Salem, Oregon.  Each Taco Bell restaurant is managed by a team of managers, including, in most cases, a Restaurant General Manager, and one or more Assistant Restaurant Managers.  Additionally, there are one to three hourly employees designated as Shift Managers.  The restaurants are also supervised by a District Manager, a Market Manager (a/k/a Above Store Lead), and the Chief Operating Officer and/or other officials from the corporate office of ES-O-EN.

Sackett worked as an Assistant Manager throughout the duration of her employment, i.e., from August 10, 2002 to November 3, 2002. She was initially trained at the Lancaster Drive Taco Bell location, and was assigned there from August 10, 2002 until September 2, 2002. Thereafter, Sackett was transferred to the Commercial Street location where she worked until November 3, 2002.

Sackett was one of three Assistant Managers assigned to the Commercial Street location. The other two Assistant Managers were Tiffany Miller and Brian Gorton. Because there was no Restaurant General Manager dedicated to Commercial Street during the period of Sackett's assignment, Miller was designated as the Acting Restaurant General Manager. Gorton did not supervise Sackett. In addition, the District Manager, Beth Teske, worked closely with the existing management team while the search for a Restaurant General Manager was conducted.

Between approximately September 2, 2002 and November 3, 2002, Sackett alleges that she was subjected to unlawful sexual harassment by Gorton. In support of these allegations, Sackett asserts Gorton said two weeks before she quit that if she were "getting regular sex maybe [she] would not be so hard to get along with and would not be focused on [her] job, that [her] problem was that [she] had no life outside of work that was why [she] was so wrapped up in [her] job." Defendant's Concise Statement of Material Facts, ¶ 4.

She also contends that Gorton told her one time that she "needed sex," and that she "would not be so uptight if [she] was getting some." Plaintiff's Concise Statement of Material Facts, ¶ 3(f). According to Sackett, Gorton told her that if she would go out and "get laid" then she would not be such a "bitch" and would not find them and their (presumably Gorton and the other male employees') jokes so offensive. Id. Gorton told Sackett that she needed a boyfriend

Page 3 - OPINION AND ORDER

and that if Sackett didn't have such a "big ass," she could go out and get one.  Id.  Plaintiff contends Gorton made some of these comments in the close-quarters of the managers' office, while blocking her exit, and asserts that Gorton is a physically intimidating man.

Gorton was rude to all of the employees in the restaurant.  He would make crude and vulgar comments about his body parts.  Gorton was also rude to customers.  Sackett estimates that 75% of the shift involved sexual comments and conduct.  For example, Gorton and other male employees would allegedly talk about their own sexual exploits, discuss the benefits of one woman's missing teeth, and make sexual jokes about food items on the prep line.  When it was busy Gorton and Sackett had to stand on the prep line directly across from each other, during which time Sackett felt compelled to listen to Gorton's sexual comments and watch his sexual conduct.

Some of these comments and conduct were not directly aimed at plaintiff, but plaintiff alleges the comments could be easily overheard in the small space and from the managers' office. According to Sackett, Gorton and the other male employees talked loud enough to be heard by every woman in the store.  Gorton knew that plaintiff found the sexual references offensive, since plaintiff told him so.

Sackett brought the problems she had with Gorton to the attention of Tiffany Miller and allegedly at management meetings, but never took them any higher up the chain of command despite defendant's policy directing employees to do so.  She submitted a letter to Miller documenting some job performance complaints about Gorton on or about October 10, 2002 that did not contain any information about the alleged sexual harassment.  Ex. 11 to Sackett Depo. (hereinafter, "Exhibit 11").  Sackett contends that she had hoped the matter would be resolved at

the store level, without having to go to the corporate office. She also hoped to ride the situation out until her transfer as a manager.

On November 3, 2002, Sackett arrived at Taco Bell to work the evening shift. Gorton told Sackett that the restaurant was out of lettuce and that she would have to get some for her shift. After that, Sackett slammed her keys on the counter and left the restaurant, abandoning her position with defendant. According to Sackett, when Gorton cornered her in the office on November 3, 2002, she snapped. She went into an extreme panic attack and decided to quit.

Sackett asserts that she has had mental health problems for many years that have required counseling. Her mental disease manifests itself in panic attacks, nightmares and flashbacks, and she has been diagnosed with Post Traumatic Stress Disorder. Prior to beginning the job with defendant, she was functioning very well, going from being disabled to being able to hold a full time job. She had not been having disabling panic attacks or flashbacks. According to Sackett, the sexual comments and conduct at work caused her extreme distress and upset. She contends, the panic attacks started again the week before she quit.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the

evidence is viewed in the light most favorable to the nonmoving party. Universal Health Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

**DISCUSSION**

I.  Sham Affidavit

Sackett offers a litany of other allegations in her concise statement of material facts, other than those set forth above, citing both to deposition testimony and to Sackett's affidavit and in some cases to neither. In its reply, defendant asserts that many of these statements are unsupported by Sackett's deposition testimony, and are directly contrary to it. Defendant contends that Sackett is attempting to create an issue of fact, and that the court should disregard the affidavit.

Defendant neglected to file a motion to strike Sackett's affidavit. Accordingly, Sackett was unable to respond to defendant's argument that her affidavit is a sham.

In addition, having reviewed both the deposition testimony and the affidavit, I do not find that the affidavit directly contradicts Sackett's testimony. For example, Sackett testifies to "sexual comments, and jokes, discussions over the lunch hour." Sackett Depo. 95: 13-24. In her affidavit, she clarifies that "Gorton and other male employees talked about their own sexual exploits: how much sex they had the night before, how they did it and how much their 'women' enjoyed it." Sackett Aff. ¶ 3(a).

Furthermore, the Ninth Circuit has recently reminded courts,

> [A]t this stage of the litigation, the judge does not weigh disputed evidence with respect to a disputed material fact. Nor does the judge make credibility determinations with respect to statements made in affidavits, answers to interrogatories, admissions, or depositions. These determinations are within the province of the factfinder at trial.

Page 6 - OPINION AND ORDER

Dominguez-Curry v. Nevada Transportation Dept., No. 03-16959, slip op. 13185, 13198, *available at* 2005 WL 2218908 (9th Cir. Sept. 14, 2005) (quoting T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987) (internal citations omitted)).

Nevertheless, I have avoided referencing portions of Sackett's concise statement of material facts that rely on Sackett's affidavit if the affidavit is not also generally supported by her deposition testimony or by other evidence in the record, nor have I relied on those facts that are not supported by citation to the record.

II.   Title VII and ORS 659A.030

Title VII and ORS 659A.030 prohibit an employer from discriminating against an employee on the basis of sex. Sackett bases her allegations on a hostile environment theory.

To make out a *prima facie* case for hostile environment sexual harassment, Sackett must prove that: (1) she was subjected to verbal or physical conduct of a harassing nature, (2) that this conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. Pavon v. Swift Transp. Co. 192 F.3d 902, 908 (9th Cir. 1999). In addition, Sackett must demonstrate that the harassment was "because of sex." Nichols v. Azteca Rest. Enters. Inc., 256 F.3d 864, 872 (9th Cir. 2001) (citations omitted). Finally, defendant will be liable only if it or a member of defendant's management knew or should have known of the harassment and failed to take prompt, effective remedial action reasonably calculated to end the harassment. Swinton v. Potomac Corp., 270 F.3d 794, 803 (9th Cir. 2001).

A. <u>Conduct of a Sexually Harassing Nature</u>

Defendant asserts that Sackett cannot successfully show that Gorton's comments were *directed* at her because of sex. Defendant argues that it is undisputed that Gorton behaved this way with everyone, including men, women, and customers. Defendant also focuses on the conduct Sackett complained about in Exhibit 11, her letter to Miller describing issues related to Gorton's job performance that contained no complaints of a sexual nature, arguing that Gorton's conduct was not sexual in nature.

Sackett responds that she and Gorton disagreed about many management issues, and did not like each other. However, in addition, Sackett was subjected to Gorton commenting on her need for "regular sex", as well as Gorton and other male shift workers joking about ingredients in the food prep line in a sexual manner and discussing their sexual desires.

I find that Sackett has established a *prima facie* case that Sackett was subjected to verbal conduct of a harassing nature, and the harassment was because of sex. Although defendant puts great stock in the fact that others besides Sackett were the recipients of Gorton's comments, this factor is not nearly as stringent as defendant would have it. It is undisputed that Gorton directed a few sexual comments at Sackett and, if Sackett's version of the facts is accurate, she worked in an environment that was saturated with sexual innuendo and comments about women. See <u>Dominguez-Curry</u>, No. 03-16959, slip op. at 13199, *available at* 2005 WL 2218908 (quoting <u>McGinest v. GTE Serv. Corp.</u>, 360 F.3d 1103, 1117 (9th Cir. 2004) ("As we have held, 'if . . . hostility pervades a workplace, a plaintiff may establish a violation of Title VII, even if such hostility is not directly targeted at the plaintiff.'")). Viewing the evidence in the light most favorable to Sackett, I deny defendant's motion for summary judgment on this basis.

Page 8 - OPINION AND ORDER

B.  Alleged Conduct Severe or Pervasive

In order to be actionable under Title VII, a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim did in fact perceive to be so. Harris v. Forklift Sys., Inc., 510 US 17, 21-22 (1993). The court looks at "all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 23. The required level of severity or seriousness "varies inversely with the pervasiveness or frequency of the conduct." Ellison v. Brady, 924 F.2d 872, 878 (9th Cir. 1991). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (internal quotation marks and citations omitted).

Defendant contends that, even if true, Sackett has not alleged violations that rise to the level of severe or pervasive conduct. Defendant asserts that the few times Gorton told her to "get laid" is not sufficient to constitute severe and pervasive conduct. Defendant compares a case in which the court found the actions constituted severe and pervasive conduct, and one where it did not. In Harris v. Forklift Sys., Inc., the male company president told the plaintiff, a female subordinate, "you're a woman, what do you know" and "we need a man as the rental manager." Harris, 510 U.S. at 19. He suggested in front of other employees that he and plaintiff "go to the Holiday Inn to negotiate [plaintiff's] raise." Id. The president sometimes asked the plaintiff and other female employees to get coins out of his front pants pocket. Id. This constituted severe and pervasive conduct. Id. at 23.

Page 9 - OPINION AND ORDER

In comparison, in Indest v. Freeman Decorating, Inc., 164 F.3d 258 (5th Cir. 1999), plaintiff complained the Vice President made crude sexual comments and sexual gestures to her while she was alone and in the presence of her immediate supervisor on four occasions. The Vice President never touched her, and made only vulgar remarks and innuendos about his own anatomy. "In light of the demanding standard, it is difficult to conclude that the conduct to which Indest was briefly subjected created a sexually abusive overall working environment . . . . [The Vice President's] vulgar remarks and innuendos (about his own anatomy) were no more offensive than sexual jokes regularly told on major network television programs." Indest, 164 F.3d at 264.

Sackett points to the repeated and continuous jokes, comments, and conduct she alleges in her affidavit and in her deposition testimony. Sackett testified that sex-based behavior occupied as much as 75% of the shift. Sackett Aff. ¶ 15.

For purposes of summary judgment, looking at the facts in the light most favorable to Sackett, it is sufficient that Sackett alleged the environment was saturated with sexual innuendo, stories and jokes, and that Gorton made comments of a sexual nature to her on a handful of occasions, keeping in mind that the severity of the conduct necessary to make a claim varies based on the frequency of the conduct. Although the facts follow Indest more closely than those set forth in Harris, I note that Indest never made a holding on the severe and pervasive environment because the court decided against plaintiff based on the quick remedial action taken by the employer. In fact, the court specifically noted that whether plaintiff was subjected to a sufficiently severe environment "might be a close question" on the summary judgment record. Indest, 164 F.3d at 264.

C. Prompt, Effective Remedial Action

Sackett must show that the employer knew or should have known of the harassment, and took no effectual action to correct the situation. Mockler v. Multnomah County, 140 F.3d 808, 812 (9th Cir. 1998). If an employer does not know of the sexual harassment, it is impossible for the employer to take remedial action. See id.

Defendant argues that it did not have any knowledge of any allegations it was required to remedy. It is undisputed that defendant adopted a sexual harassment policy identifying an appropriate procedure for reporting alleged harassment. Sackett did not follow the policy when she believed she was being sexually harassed. Defendant asserts it did not have any knowledge of any allegations for which to provide a prompt remedy.

According to defendant, the memorandum to Miller (Exhibit 11) did not contain any allegations of sexual harassment, only complaints about Gorton's job performance. Even if Sackett's complaints to Miller included reports of sexual harassment, Sackett did not continue up the chain of command as the policy instructed. Sackett did not contact company headquarters or call the toll free hotline. She failed to do so despite her many years of experience in restaurant management and training in sexual harassment.

> Q: What did the company handbooks say that you as an employee were to do if you felt you were a victim of harassment?
>
> A: We were to follow the chain of command. We were to go to our immediate supervisor which would have been Tiffany, and then if I didn't get the results that were satisfactory, I could seek another manager in a different store, and/or go to the district manager.
>
> Q: And what if you didn't get satisfied at the district manager?
>
> A: Then to report it to the corporate headquarters.

> Q: Is it correct that you never made any report to corporate headquarters, true?
>
> A: True.
>
> Q: Nor did you use the hot line number which you were given, true?
>
> A: True.
> . . .
> Q: And you understood the right you had to report problems of this nature, correct?
>
> A: Yes.

Sackett Depo. at 91:4-19; 92:16-93:5. Furthermore, both Miller and Teske testify that Sackett never discussed her sexual harassment complaints with them.

Sackett responds that she complained to her supervisor, Miller, and the District Manager, Beth Teske, about the harassment. Miller herself witnessed the conduct. Given the reporting responsibilities of the store managers and district managers, Sackett argues, defendant should have known about the harassment and taken remedial steps. They did not.

Again, looking at the facts in the light most favorable to plaintiff, I must assume Sackett told her supervisor and the district manager about the sexual conduct. Similar reporting has been deemed sufficient, even if the employee does not comply with the formal reporting requirements. See Nichols, 256 F.3d at 876 n.10 (complaints to supervisor, general manager and assistant manager sufficient because they were placed company on notice; defendant's corporate structure not so large as to make it "impractical for managers to communicate with the corporate office about such important matters as harassment").

Accordingly, I deny defendant's motion for summary judgment and find that plaintiff is entitled to trial on her hostile work environment claim.

III.   Constructive Discharge Under ORS 659A.030

There is no dispute that Sackett abandoned her position with ES-O-EN. Sackett includes allegations of constructive discharge in her Title VII and in her ORS 659A.030 claims. Defendant argues that Sackett was not constructively discharged in violation of Oregon law.

Under Oregon law a plaintiff must show:

> (1) the employer intentionally created or intentionally maintained specified working conditions(s); (2) those working conditions were so intolerable that a reasonable person in the employee's position would have resigned because of them; (3) the employer desired to cause the employee to leave employment as a result of those working conditions or knew that the employee was certain, or substantially certain, to leave employment as a result of those working conditions; and (4) the employee did leave the employment as a result of those working conditions.

McGanty v. Staudenraus, 321 Or. 532, 557, 901 P.2d 841 (1995); see also, Ballinger v. Klamath Pacific Corp., 135 Or. App. 438, 452-53, 898 P.2d 232 (1995) (standard applicable to both common law wrongful discharge as well as a claim under ORS 659A.030(1)(a)). Furthermore, "[i]f a supervisor continues to sexually harass or allow harassment, it is reasonable to infer that the supervisor is deliberately maintaining working conditions that will force the employee to either submit to the harassment or quit the job." Ballinger, 135 Or. App. at 454.

Defendant asserts that plaintiff cannot show working conditions so intolerable that a reasonable person would feel compelled to resign. Gorton asked her to get lettuce, and Sackett was upset that Gorton ran out of lettuce during his shift and had not replenished it. Even if Gorton told Sackett to get her "big ass out there" and get lettuce, as she alleges, Sackett admits that Gorton behaved this way with all employees. The conduct was not directed at her because

she was a woman, and therefore her constructive discharge claim based on sexual harassment should fail.

Sackett responds that in the week before she left she had begun experiencing a recurrence of panic attacks. She relates the onset of the panic attacks to the sexual conduct of Gorton by cornering her in the office and telling her she needed to have sex, which she alleges happened the day before she quit. The sexual harassment and hostile working environment, according to Sackett, created an intolerable working condition. Sackett felt she had no option but to quit.

Defendant replies by pointing out that there were other options available to plaintiff besides quitting. She could have called the Director of Human Resources to report the alleged problems she was having, or called the Taco Bell confidential toll-free hotline. Furthermore, Gorton's comment to Sackett that she "needed to get laid" occurred the day before, but plaintiff returned to work the next day. It was only after Gorton informed Sackett that his shift had run out of lettuce and she would have to go get some more that she decided to quit.

Viewing the facts in the light most favorable to Sackett, and looking at the totality of the circumstances as opposed to narrowing my view to the day Sackett quit, I find that a question of fact remains as to whether a reasonable person would have found conditions so intolerable as to feel forced to quit. Sackett testified that approximately 75% of the shift involved sexual comments and conduct, Miller, the Acting Restaurant General Manager, witnessed the conduct, and Sackett allegedly separately brought the conduct to the attention of Miller and Teske to no avail. Furthermore, Sackett testified, "The day I quit I got into the office and Brian came in and I am not exactly sure, I don't remember what he said, but it was just the fact that he was, had me in the office again. You know, there was this big man making crude comments to me in the office.

And I just decided I'm not going to live like this." Sackett Depo. 111:24 - 112:4. Accordingly, there is a question of fact whether a reasonable person in Sackett's shoes would have felt her only options were to submit to the alleged harassment or quit.

## CONCLUSION

Defendant's Motion for Summary Judgment (#21) is denied.

IT IS SO ORDERED.

Dated this   21st   day of September, 2005.

                                        /s/ Garr M. King
                                        Garr M. King
                                        United States District Judge